IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 17, 2001

**STATE OF TENNESSEE v. STEVEN LLOYD GIVENS**

**Appeal from the Criminal Court for Davidson County**
**No. 99-C-2110     J. Randall Wyatt, Jr., Judge**

—————————

**No. M2001-00021-CCA-R3-CD - Filed November 29, 2001**

—————————

The Defendant, Steven Lloyd Givens, was convicted of attempted especially aggravated kidnapping in the Criminal Court of Davidson County. After a sentencing hearing, the trial court imposed a sentence of twelve years as a Range I offender to be served in the Department of Correction. In this appeal as of right, the Defendant argues that the trial court erred in (1) denying the Defendant's motion to suppress the evidence seized during the Defendant's arrest, (2) denying the Defendant's motion to suppress the results of a show-up identification of the Defendant by the victim, (3) denying the Defendant's motion to amend the indictment, and (4) in sentencing the Defendant to the maximum sentence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Dawn Deaner, Nashville, Tennessee, for the appellant, Steven Lloyd Givens.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On the morning of July 17, 1999, Renee Romans, the victim, was walking her dogs in the West End area of Nashville. As she approached an intersection, she crossed in front of a car driven by a man who the victim later identified as the Defendant. As she stopped to play with a stray dog, the driver of the car turned the vehicle around and approached the victim. The driver appeared behind the victim, grabbing her left shoulder and telling her to get into his car. The victim clearly saw a knife in her attacker's left hand. The victim began to struggle with the attacker who twisted the victim's arm behind her. Both the attacker and the victim fell to the ground, and the victim broke

free and ran to the nearest house. The victim was able to remember the license plate number of the car driven by her attacker.

Another woman driving by stopped and assisted the victim in calling the police from the woman's cell phone and relaying the license plate number. Officer David Miller of the Metro Police Department arrived on the scene and the victim gave him a description of her attacker. The victim described her attacker as a stocky man in his mid-20's with a shaved head, a goatee, and wearing faded blue shorts. The victim stated that her attacker was driving a gold sedan.

After receiving a dispatch concerning the attempted kidnapping and the license plate number of the attacker, Officer Robert Morris proceeded to the home of Deborah Gary who owned a gold Buick with a license plate number matching the one given by the victim. Because the vehicle was not at the residence, Officer Morris asked Ms. Gary if the car had been stolen. Ms. Gary replied that her son probably had the car. Officer Morris told Ms. Gary that her son needed to call the Sheriff's Department as soon as he returned, and then the officer retreated to a position from which he could observe the Gary residence.

Approximately fifteen minutes later, the Defendant arrived home driving the gold Buick and carrying a small black bag. The Defendant matched the description given by the victim. Officer Morris initially decided to wait for other officers to arrive, but then decided to approach the house alone. Ms. Gary answered the door, and Officer Morris asked if the Defendant was home. Ms. Gary replied, "Yes, he's in the bedroom. Come in." Officer Morris found the Defendant sitting on his bed and asked him if he was Steven. The Defendant replied affirmatively and was placed under arrest. Incidentally to the arrest, Officer Morris searched the small black bag the Defendant carried into the house earlier, which was lying next to the bed. The black bag contained a small pocket knife. Officer Morris also retrieved a pair of shorts from the floor of the bedroom. Ms. Gary also consented to a search of her car where officers found an open condom and a liquor bottle.

After taking the Defendant into custody, Officer Morris drove the Defendant to West End Middle School, a few blocks away from the scene of the attack, where he was identified by the victim. The Defendant stood in a group outside Officer Morris' patrol car with a shirt covering his handcuffs as the victim drove by in Officer Miller's patrol car. The victim positively identified the Defendant as her attacker. Approximately one hour passed from the time of the attack until the victim's identification of the Defendant at West End Middle School.

## DEFENDANT'S MOTION TO SUPPRESS

The Defendant first challenges the trial court's denial of his motion to suppress evidence found within his home. The Defendant specifically contends that the police officer's warrantless entry into his home, his subsequent arrest, and the seizure of certain items in his bedroom violated his right to be free from unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution, and Article 1, section 7, of the Tennessee Constitution because no valid consent was given and no exigent circumstances existed to warrant the entry and search. We must respectfully disagree.

The Fourth Amendment to the Constitution of the United States provides that:
[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated. No warrant shall issue but upon probable cause supported by oath or affirmation and particularly describing the place to the searched and the person or things to be seized.

Article 1, section 7 of the Constitution of Tennessee also guarantees that the people shall be free from unreasonable searches and seizures. The State may not invade this personal constitutional right of the individual citizen except under exigent circumstances.

A warrantless search and seizure, therefore, is presumed unreasonable unless it falls into one of the narrowly defined exceptions, or exigent circumstances, to the warrant requirement. See Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); Fuqua v. Armour, 543 S.W.2d 64, 66 (Tenn. 1976); State v. Transou, 928 S.W.2d 949, 958-959 (Tenn. Crim. App. 1996). The mere existence of these circumstances does not necessarily validate a warrantless search. There must be a showing by those asserting the exception that the exigencies of the situation rendered the search imperative. The burden is on those seeking the exception to show the need. It is, of course, well settled that one of the exceptions to the warrant requirement is a search conducted pursuant to consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); State v. Jackson, 889 S.W.2d 219, 221 (Tenn. Crim. App.1993). The sufficiency and validity of consent depends largely upon the facts and circumstances presented by each particular case. See Jackson, 889 S.W.2d at 221.

Findings of fact made by a trial court during an evidentiary hearing on a motion to suppress must be given the weight of a jury verdict, and an appellate court must not set aside the trial court's findings unless the evidence preponderates against them. See Jackson, 889 S.W.2d at 222. Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. See State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

We also note that when an arrest occurs in a home the police are generally required to obtain a warrant. See Payton v. New York, 445 U.S. 573, 576 (1980); State v. Wilson, 990 S.W.2d 726, 730 (Tenn. Crim. App. 1998). However, when voluntary and knowing consent is given to enter the home, the warrant is not required. See U.S. v. Matlock, 415 U.S. 164, 169-170 (1974); Wilson, 990 S.W.2d at 730 (holding that consent to enter given by the defendant's wife was valid for warrantless in-home arrest).

The Defendant first contends that the trial court erred in finding that Officer Morris' entry into his home was lawful. The trial court expressly found that the warrantless entry was proper based upon the consent given Officer Morris by Ms. Gary, as well as, upon exigent circumstances. It is clear from the record that Ms. Gary, knowing Officer Morris was looking for her son, voluntarily invited him into her home and directed him to her son. The Defendant contends that Ms. Gary's consent was not knowing and voluntary because she did not know Officer Morris was going to arrest her son. Officer Morris had previously informed Ms. Gary that her son needed to call the Sheriff's

Department as soon as he arrived home. When Officer Morris returned to the home, Ms. Gary had been admonishing her son for taking her car without her permission, and Ms. Gary was clearly aware that there was a problem with her car that concerned the police. To require Officer Morris to inform Ms. Gary that he was there to arrest her son could have placed Officer Morris in danger, as well as given the Defendant an opportunity to flee. Officer Morris did not use fraud or trickery to obtain entry to the house, but, rather, informed Ms. Gary that he needed to talk to her son. Accordingly, we find that Ms. Gary consented to Officer Morris' entry into her home.

The trial court also found that Officer Morris' entry was justified based upon exigent circumstances. A warrant is unnecessary when exigent circumstances exist that necessitate an immediate arrest. See State v. Shaw, 603 S.W.2d 741, 742 (Tenn. Crim. App. 1980) (finding that exigent circumstances existed when police were informed of an impending drug deal and the defendant proceeded to the stated location while under surveillance). The trial court determined that "the situation required immediate action by Officer Morris to detain the suspect and to ensure the safety of the responding officers and the general public" due to the violent nature of the offense the Defendant was suspected of perpetrating. Exigent circumstances are limited to three situations: (1) when officers are in "hot pursuit" of a fleeing suspect; (2) when the suspect presents an immediate threat to the arresting officers or the public; or (3) when immediate police action is necessary to prevent the destruction of vital evidence or thwart the escape of known criminals. See State v. Rodney Ford, No. 01C01-9708-CR-00365, 1999 WL 5437, at *3 (Tenn. Crim. App., Nashville, Jan. 7, 1999), citing Jones v. Lewis, 874 F.2d 1125, 1130 (6th Cir. 1989).

The trial court relied on the random and violent nature of the attempted kidnapping and Officer Morris' observations concerning the Defendant's resemblance to the victim's description of the perpetrator in finding the existence of exigent circumstances. While the factors relied upon by the trial court suggest that Officer Morris had probable cause to arrest the Defendant, such probable cause will not excuse a warrantless entry into the Defendant's home absent exigent circumstances. See Payton, 445 U.S. at 576. Officer Morris was not in hot pursuit of the Defendant, nor was any evidence presented to suggest the Defendant was an immediate danger to the public or likely to destroy evidence. Without such factors being present, the trial court erred in holding that Officer Morris' entry into the Defendant's home was justified by exigent circumstances. See State v. McMahan, 650 S.W.2d 383, 387 (Tenn. Crim. App. 1983). However, the error is harmless in light of our previous determination that Officer Morris entered the home pursuant to the Defendant's mother's valid consent.

The Defendant argues alternatively that even if Officer Morris' entry into the home was permissible, the search of the Defendant's room and the seizure of a pocket knife and a pair of shorts was unreasonable. During a search incident to a lawful arrest, an officer may search the suspect's person and the area within his immediate control. See Chimel v. California, 395 U.S. 752, 762-763 (1969); State v. Crutcher, 989 S.W.2d 295, 300-301 (Tenn. 1999)(holding that a search was invalid because the defendant was not under arrest at the time of the search); State v. Transou, 928 S.W.2d 949, 958-959 (Tenn. Crim. App. 1996) (finding that marijuana seized incident to a valid arrest was clearly admissible). Officer Morris testified that when he entered the Defendant's bedroom, the

Defendant was sitting on his bed with a black bag and a pair of shorts on the floor next to him. The black bag was the same bag Officer Morris had seen the Defendant carry into the house earlier. Officer Morris was also aware that the Defendant was suspected of an offense involving a knife. The trial court found and the evidence supports the finding that the seizure of the shorts and the knife that was found in the black bag were lawful seizures as a result of a search incident to an arrest. We agree.

Accordingly, we find that Officer Morris was given consent to enter the Defendant's home and the seizure of the knife and shorts was the result of a lawful search incident to an arrest. We affirm the trial court's ruling on the Defendant's motion to suppress. This issue is without merit.

## SHOW-UP IDENTIFICATION

The Defendant next argues that he was prejudiced by the victim's show-up identification of him an hour after the offense occurred. The Defendant contends that the identification was unduly suggestive and that there is a substantial likelihood that the victim misidentified the Defendant.

Show-up identifications are inherently suggestive and unfair to the accused, and have been repeatedly condemned as a means of establishing the identification of a suspect. See State v. Thomas, 780 S.W.2d 379, 381 (Tenn. Crim. App. 1989). However, show-up identifications are permissible if (a) there are imperative circumstances which necessitate a show-up, or (b) the show-up occurs as an on-the-scene investigatory procedure shortly after the commission of the crime. See id. The danger of irreparable misidentification must be avoided. See Neil v. Biggers, 409 U.S. 188, 198 (1972). The Supreme Court has stated that "the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Id. at 199-200.

Based upon the factors set forth in Neil v. Biggers, the trial court determined that the show-up identification was non-suggestive and reliable. The evidence supports the trial court's finding. The victim had ample opportunity to view the Defendant in the daylight during the attack. The degree of the victim's attention and awareness is clearly evidenced by the accuracy of her initial description to police and her ability to observe and remember the license plate number of the car the Defendant was driving. Furthermore, the victim unequivocally identified the Defendant at the show-up. The show-up identification itself occurred less than an hour after the attack and was the result of an organized and efficient investigation by patrol officers. Accordingly, we affirm the trial court's decision to deny the Defendant's motion to suppress the evidence of identification due to the show-up identification. This issue is without merit.

## KIDNAPPING STATUTES

The Defendant also argues that Tennessee's especially aggravated kidnapping and aggravated kidnapping statutes, read together, are unconstitutionally vague. The Defendant asserts that the legislative intent of the two statutes may not be clear to a jury, and that lack of clarity within the

statutes violates the Defendant's right to due process guaranteed in the Fourteenth Amendment to the United States Constitution, and Article 1, section 8, of the Tennessee Constitution. We must respectfully disagree.

The guiding principle of statutory construction is to seek out and give effect to the legislative purpose of the entire statute. See State v. Williams, 854 S.W.2d 904, 907-908 (Tenn. Crim. App. 1993). Statutory meaning is derived in light of the general purposes of the act as a whole. Id. at 907; see also Tennessee Manufactured Housing Ass'n v. Metropolitan Gov't of Nashville, 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990). Tennessee Code Annotated section 39-11-104 dictates that the "provisions [of the criminal code] shall be construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." Tenn. Code Ann. § 39-11-104. See Williams, 854 S.W.2d at 908.

In Kentrail Sterling v. State, No. W1999-00608-CCA-R3-CD, 2001 WL 1117518 (Tenn. Crim. App., Jackson, Sept. 24, 2001), this Court rejected a defendant's challenge to these same kidnapping statutes as unconstitutionally vague, stating that "the legislative intent is clear: the legislature intended to treat and punish crimes under this statute more harshly than under statutes setting forth lesser crimes of the same nature . . . ." Id. at *6. We agree that the legislative intent of the two kidnapping statutes is clear and meets constitutional guidelines.

Accordingly, the Defendant's challenge to the constitutionality of the statutes is without merit.

**SENTENCING**

Finally, the Defendant challenges the length of the sentence imposed by the trial court. The Defendant was sentenced to twelve years as a Range I offender, the maximum allowed by law. The Defendant contends that the trial court failed to properly apply enhancing and mitigating factors, and that a proper application of these factors would entitle the Defendant to a less severe sentence. We respectfully disagree.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for

rehabilitation or treatment.  See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result.  State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The trial court found at the sentencing hearing, and the Defendant concedes, that two statutory enhancement factors are applicable to the Defendant:  (1) the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and (2) the felony was committed while the Defendant was on bail from a felony charge, and the Defendant was ultimately convicted of the prior felony.  See Tenn. Code Ann. § 40-35-114(1), (13).

The trial judge also stated that two other enhancement factors should apply, but he was unsure of the law governing that decision.  The Defendant characterizes this statement by the trial court as evidence of an impermissible sentence because it is unclear which factors were used by the trial court to determine the Defendant's sentence.  The prosecution requested that the trial court consider as enhancement factors the Defendant's lack of hesitation in committing the crime when the risk to human life was high, and  the crime's potential for great bodily injury to the victim.  See Tenn Code Ann. § 40-35-114(10), (16).  The Defendant argued during the sentencing hearing that this Court's decision in State v. Kern, 909 S.W.2d 5, 7-8 (Tenn. Crim. App. 1993), precluded consideration of those enhancement factors in an attempted especially aggravated kidnapping case.

In Kern, this Court held that enhancement factors (10) and (16) were elements of the offense of especially aggravated kidnapping because the applicability of the factors was based solely on the defendant's use of a deadly weapon.  See id.  Attempted kidnapping is an attempt to falsely imprison another "[u]nder circumstances exposing the other person to substantial risk of bodily injury."  See Tenn. Code Ann. § 39-13-303(a)(1).  Attempted kidnapping becomes attempted especially aggravated kidnapping when it is attempted with a deadly weapon.  See Tenn. Code Ann. § 39-13-305(a).  Because enhancement factors (10) and (16) require a high risk to human life and potential for bodily injury, respectively, and the kidnapping statute requires circumstances "exposing the other person to substantial risk of bodily injury," we find that the enhancement factors are inapplicable in the present case.  Tenn. Code Ann. § 39-13-303(a)(1).  The Defendant properly relied on Kern to preclude the use of enhancement factors (10) and (16) during the sentencing hearing.

However, the trial court clearly stated that the Defendant's sentence was based on the weight given to the first two enhancement factors.  The trial court properly found that the Defendant's extensive criminal history and the fact that the offense was committed while the Defendant was on

bail from a felony charge outweighed any mitigating factors and supported imposition of the maximum sentence.

The Defendant requested the application of six mitigating factors:

1)	substantial grounds existed tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
2)	the crime was committed under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct;
3)	the Defendant suffered from a substance abuse problem and has made efforts to remedy that problem while incarcerated;
4)	the Defendant has made efforts to improve himself as a human being while incarcerated by completing violence workshops, becoming baptized, and obtaining his G.E.D.
5)	the Defendant has been consistently employed while incarcerated; and
6)	the Defendant is remorseful.

See Tenn. Code Ann. § 40-35-113(3),(11),(13).

The trial court found the Defendant's substance abuse problem to be the only applicable mitigating factor, but stated that "the substance abuse, unusual circumstances, none of them, as far as this Court is concerned, even measures [sic] up in any way to the enhancement factors." It is apparent from the record that if the trial judge found the Defendant to be at all remorseful, he gave little if any weight to this factor. The trial court put great emphasis on the violent nature of the crime and the fact that the Defendant was on bail from another felony when he committed this offense. We agree with the trial court's assessment that neither the Defendant's substance abuse problems nor his efforts to improve himself while incarcerated warrant mitigation in light of the applicable enhancement factors.

Therefore, we find that the trial court properly considered all of the relevant sentencing factors and properly sentenced the Defendant. The sentence imposed by the trial court is affirmed.

## CONCLUSION

Accordingly, after a thorough review of the record, the judgment of the trial court is AFFIRMED.

_____
DAVID H. WELLES, JUDGE

-8-