STATE of Tennessee, Appellee,

v.

Ricky H. WILSON, Appellant.

Court of Criminal Appeals of Tennessee,
at Knoxville.

Nov. 4, 1998.

No Permission to Appeal Applied for
to the Supreme Court.

F.D. Gibson, Maryville, for appellant.

John Knox Walkup, Attorney General and Reporter, Nashville, Ellen H. Pollack, Assistant Attorney General, Criminal Justice Division, Nashville, Tammy Harrington, Assistant District Attorney General, Maryville, for appellee.

## *OPINION*

WADE, Presiding Judge.

The defendant, Ricky H. Wilson, was convicted in a bench trial of disorderly conduct and public intoxication. The trial court imposed concurrent, thirty-day sentences for each offense with release after service of ten days.

In this appeal of right, the defendant raises the following issues:

(I) whether the evidence is sufficient to support each conviction; and

(II) whether dual convictions for disorderly conduct and public intoxication violate double jeopardy principles.

Both convictions are reversed and dismissed for insufficient evidence.

On February 3, 1997, Officer Joe Thornhill of the Alcoa Police Department responded to three separate "disturbance call[s]" at the defendant's residence. The defendant's wife, Ms. Wilson, was the complainant on each call. The first time Officer Thornhill arrived, the defendant was not present. After speaking with Ms. Wil-

son, he left. When he arrived after the second call, Ms. Wilson spoke to him near the rear of the house so they would not be disturbed by the defendant, who was seated in a chair in the living room. During their conversation, Officer Thornhill heard loud voices coming from either the living room or street. Upon further investigation, he discovered the defendant "on the walkway outside the residence" arguing with Sergeant Jim Miller who had responded to the dispatch. Because it was near midnight, the officers demanded the defendant, who was obviously intoxicated, to "quiet down." It took several minutes to calm the defendant.

The defendant returned to his residence and officers were preparing to leave when Ms. Wilson made the third call. Officer Thornhill went back inside to arrest the defendant "for the scene that [he] caused outside just a few moments ago." Because the defendant did not cooperate with Officer Thornhill, other backup officers sprayed the defendant with pepper spray and he was placed under arrest.

Officer Jim Miller testified that he arrived at the scene after Officer Thornhill, entered the residence, and ordered the defendant to sit down and be quiet when he became loud and argumentative. He recalled that the defendant, who was both agitated and drunk, moved outside to the front porch and became louder and louder. Officer Miller explained that "[s]ince he was at home, we were trying to give him a chance to not have to take him to jail. . . ." While on the porch, "[h]e was loud enough that anybody in the area could have heard him."

Officer Miller testified that he and Officer Thornhill were preparing to leave when Ms. Wilson made the third call. When the defendant become uncooperative during the arrest process, the officer sprayed the defendant in the face with pepper spray. Officer Thornhill was then able to make the arrest.

Officer Robert Simerly was also dispatched to the residence as a backup. He verified the accounts of the incident provided by the other officers and described the defendant as angry and shouting.

George Steven Eisenhower appeared as a witness for the defense. He testified that he was with the defendant at the defendant's brother's residence until around 10:00 P.M., when they went to the defendant's residence. He recalled that the police left when the defendant explained that there was no disturbance at the residence. Eisenhower claimed that he did not recall hearing any type of disturbance outside the residence. He stated that the police returned a few minutes later in response to another call, sprayed the defendant with chemical spray, and made the arrest.

The trial judge found the defendant guilty of public intoxication and disorderly conduct but dismissed a charge for resisting arrest. The trial judge made the following findings:

> As far as the public intoxication and disorderly conduct goes, he was in a public place. There's not any evidence that he was forced out there. . . . [One officer] was out on the porch or out on the sidewalk with Mr. Wilson. . . . All three [officers] testified that he was under the influence, . . . that he was causing unreasonable noise and unreasonably annoying people. So, I find him guilty of public intoxication and disorderly conduct. . . .

## I

The defendant's first complaint is that the evidence is insufficient. He contends the state failed to establish the elements of each offense. We must agree.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). The credibility of the witnesses, the weight to be given their testimony, and the recon-

ciliation of conflicts in the proof are matters entrusted to the trier of fact. *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn.Crim. App.1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); Tenn. R.App. P. 13(e). Although this case was a bench trial, the findings of the trial judge who conducted the proceeding carry the same weight as a jury verdict. *State v. Tate*, 615 S.W.2d 161, 162 (Tenn.Crim.App.1981).

■ Public intoxication occurs when a person "appears in a public place under the influence of a controlled substance or any other intoxicating substance to the degree that [t]he offender may be endangered; [t]here is endangerment to other persons or property; or [t]he offender unreasonably annoys people in the vicinity." Tenn.Code Ann. § 39–17–310. Our code defines "public place" as follows:

> [A] place to which the public or a group of persons has access and includes, but is not limited to, highways, transportation facilities, schools, places of amusement, parks, places of business, playgrounds and hallways, lobbies and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence. An act is deemed to occur in a public place if it produces its offensive or proscribed consequences in a public place.

Tenn.Code Ann. § 39–11–106(a)(29).

■ The trial judge found that the defendant had "unreasonably annoyed people." *See* Tenn.Code Ann. § 39–17–310(a)(3). In our view, however, the evidence is insufficient to support this conclusion. Although there is proof that the defendant was arguing loudly outside his residence after midnight, there is no proof that he actually annoyed anyone else in the vicinity. Officer Miller testified that the defendant yelled loud enough that anyone in the neighborhood could have heard him. That someone in the area could have heard the defendant does not establish that he unreasonably annoyed others. The statute requires that the defendant, in fact, "unreasonably annoy[ ] people in the vicinity," not that his conduct could have annoyed others. In consequence, the conviction for public intoxication must be reversed and dismissed.

■ Disorderly conduct occurs when a person:

> (a) ... in a public place and with intent to cause public annoyance or alarm
>
> (1) Engages in fighting or in violent or threatening behavior;
>
> (2) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency; or
>
> (3) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.
>
> (b) A person also violates this section who makes unreasonable noise which prevents others from carrying on lawful activities.

Tenn.Code Ann. § 39–17–305.

The trial judge court convicted the defendant under subpart (b), which requires that the defendant make unreasonable noise which prevents others from carrying on lawful activities. We cannot agree with that assessment. The proof shows the defendant was arguing loudly outside of his residence after midnight. Although these facts do support the conclusion that the defendant made "unreasonable noise," there is no proof that others heard the noise and were prevented from carrying on lawful activities. Officer Miller's testimony that others "could have" heard the defendant does not establish that others did, in fact, hear the noise and were, in fact, prevented from carrying on legal activities. Accordingly, the disorderly conduct conviction must also be reversed and dismissed.

■ The defendant also argues the evidence is insufficient because the "arrest was done illegally through an improper intrusion into the residence of appellant." He complains the police made a warrantless entry into his home and that the state failed to show exigent circumstances for the failure to obtain a warrant. Generally, if an arrest occurs in a home rather than a public place, the police are required to secure a warrant. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *State v. Clark,* 844 S.W.2d 597, 599 (Tenn.1992). If a resident within the home consents to police entry, however, a warrant is not required. *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Clark,* 844 S.W.2d at 599.

■ The legality of the entry into the home was not litigated pretrial. *See* Tenn. R.Crim. P. 12. Nor did the trial court make specific factual findings on the legality of the arrest. Based on the proof at trial, however, Ms. Wilson invited the police to enter the shared residence. This complaint is, therefore, without merit.

## II

Although we have reversed and dismissed the convictions, we will address the merits of the defendant's next contention: that double jeopardy considerations bar convictions for both public intoxication and disorderly conduct. The principles announced by our supreme court in *State v. Denton,* 938 S.W.2d 373 (Tenn.1996), control.

■ The double jeopardy clauses of the United States and Tennessee Constitutions protect against multiple convictions or punishments for the same offense. The offenses supporting the convictions must be "wholly separate and distinct." *State v. Goins,* 705 S.W.2d 648, 650 (Tenn.1986); *State v. Pelayo,* 881 S.W.2d 7, 10 (Tenn. Crim.App.1994). In *Denton,* our supreme court observed that "[t]he key issue in multiple punishment cases is legislative intent." 938 S.W.2d at 379. The court suggested a *Blockburger* analysis as the first step:

[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Denton,* 938 S.W.2d at 379 (alteration in original) (quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).

■ *Blockburger,* however, "is not conclusive." *Denton,* 938 S.W.2d at 379. The court should also consider whether the same evidence is used to prove both offenses. In *Duchac v. State,* 505 S.W.2d 237 (Tenn.1973), our supreme court stated the rule as follows:

One test of identity of offenses is whether the *same evidence* is required to prove them. If the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by the statutes.

*Denton,* 938 S.W.2d at 380 (quoting *Duchac,* 505 S.W.2d at 239) (emphasis added).

■ Finally, courts should examine other factors relative to legislative intent:

(1) whether there were multiple victims involved; (2) whether several discrete acts were involved; and (3) whether the evil at which each offense is directed is the same or different.

*Denton,* 938 S.W.2d at 381 (footnotes omitted).

■ Disorderly conduct is defined as follows:

(a) A person commits an offense who, in a public place and with intent to cause public annoyance or alarm:

(1) Engages in fighting or in violent or threatening behavior;

(2) Refuses to obey an official order to disperse issued to maintain public safety

in dangerous proximity to a fire, hazard or other emergency; or

(3) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.

(b) A person also violates this section who makes unreasonable noise which prevents others from carrying on lawful activities.

(c) A violation of this section is a Class C misdemeanor.

Tenn.Code Ann. § 39–17–305.

Public intoxication is defined as follows:

(a) A person commits the offense of public intoxication who appears in a public place under the influence of a controlled substance or any other intoxicating substance to the degree that:

(1) The offender may be endangered;

(2) There is endangerment to other persons or property; or

(3) The offender unreasonably annoys people in the vicinity.

(b) A violation of this section is a Class C misdemeanor.

Tenn.Code Ann. § 39–17–310.

Because public intoxication requires that the defendant be under the influence of a controlled substance, an element which is not required for disorderly conduct, dual convictions would not have been barred by a *Blockburger* analysis.

Furthermore, different evidence is required to establish each offense. Public intoxication could only be established with the officers' testimony that the defendant was intoxicated. Proof of the defendant's intoxication would be irrelevant to showing disorderly conduct.

Finally, neither offense involved a specific identifiable victim. The evil at which each statute is directed may overlap. For example, public intoxication and disorderly conduct may both be based on "annoying" behavior. The public intoxication statute, however, also has the specific purpose of protecting the offender as well as the public from being endangered by the intoxicated offender. The disorderly conduct statute is broader and is intended to protect from the offender who engages in obnoxious, violent, abusive, or dangerous behavior with potentially harmful consequences to others. Although there is some overlap in the evil to be avoided, the statutes do have different objectives. Thus, double jeopardy would not bar dual convictions for public intoxication and disorderly conduct.

In summary, both convictions are reversed and dismissed based upon insufficient evidence.

TIPTON and WELLES, JJ., concur.