# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs November 15, 2011

## STATE OF TENNESSEE v. JAMES WILLIE BLAIR

**Direct Appeal from the Circuit Court for Franklin County**
**No. 18842     J. Curtis Smith, Judge**

_____

**No. M2011-00572-CCA-R3-CD - Filed March 16, 2012**

_____

A Franklin County Circuit Court jury convicted the Defendant-Appellant, James Willie Blair, of public intoxication, a Class C misdemeanor, and imposed a fifty dollar fine, and the trial court sentenced Blair to a thirty-day sentence in the county jail. The sole issue presented for our review is whether the evidence was sufficient to support Blair's conviction. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

B. Jeffery Harmon, District Public Defender; Robert G. Morgan, Assistant Public Defender, Jasper, Tennessee, for the Defendant-Appellant, James Willie Blair.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; James M. Taylor, District Attorney General; and Steven M. Blount, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Facts.** Brian Hill, a patrol officer with the Decherd Police Department, testified that on July 26, 2009, he saw Blair standing near the back of the police station parking lot near Main Street when he arrived at work for his 11:00 p.m. shift. Officer Hill stated that Blair was very unsteady on his feet and had difficulty standing without staggering. Because Officer Hill was in his personal vehicle at the time, he called Officer Jody Bray to assist him. Officer Hill notified dispatch that he was on duty and walked over to Blair. He immediately noticed "an extremely strong odor of an alcoholic beverage" coming from Blair. Upon conversing with Blair, he also noticed that Blair was slurring his speech and that his words and sentences were disorganized. During this conversation, Blair "continued to stagger" and,

at one point, Officer Hill grabbed Blair by the arm to ensure that he would not fall. Officer Hill asked Blair to walk to the front of a patrol car so that Blair could steady himself by sitting on the car's bumper. Blair complied with this request and sat on the patrol car's bumper.

Officer Hill said that Officer Bray and Officer Ryan Albaugh arrived at the scene after Blair was sitting on the patrol car's bumper. Blair then admitted to all three officers that he had consumed "a lot" of alcohol that night and had been walking to the store. Officer Hill said that he believed Blair was a danger to himself because he was so close to the road, and he offered to drive Blair home, which was only a short distance away. Officer Hill informed Blair that he was not under arrest but placed him in the back of his patrol car for the ride to Blair's house. He stated that he did not handcuff Blair.

Officer Hill said that Officer Bray went with him when he took Blair home. Officer Hill helped Blair walk from the patrol car to his house because Blair was still very unsteady on his feet. Once inside, Officer Hill told Blair that he needed to stay inside his house because it was dangerous for him to be intoxicated and walking on the city streets. He told Blair to go to sleep and not to leave his house until he was sober. He also warned Blair that if he did leave his house, he would be "endangering himself" and could be charged with the offense of public intoxication. Officer Hill stated that Blair seemed to understand his instructions and assured him that he would not leave his house. Blair thanked him and Officer Bray for driving him home and "giving him a break." Officer Hill said that Officer Bray went inside Blair's house and heard his instructions to Blair. Blair's house was located on Main Street in Decherd.

Officer Hill left Blair's home and drove towards the police station to start his shift. Officer Bray also drove towards the police station because it was the end of his shift. Shortly after leaving Blair's home, Officer Bray called Officer Hill to inform him that he had just observed Blair walking across Main Street. Officer Hill immediately turned around and went to Blair's location. By the time Officer Hill reached Blair, Blair had crossed Main Street and was sitting in a neighbor's yard, approximately ten to twenty feet from the street, with a fifth of a gallon bottle of whiskey. The whiskey bottle was three-fourths empty, and Blair was in the yard alone. Officer Hill helped Blair stand up and informed him that he was a danger to himself and that he could not leave him in the yard because he was afraid that Blair would be hit by a car on Main Street. Officer Hill then placed Blair in custody and took him to the county jail. At the jail, Blair again thanked Officer Hill and told him that he "probably saved his life." Officer Hill then turned Blair over to jail personnel to be booked. Officer Hill opined that Blair was "very intoxicated" the night of his arrest. On cross-examination, Officer Hill said that Blair, at the time of arrest, "was in the same [intoxicated] condition" as he had been during his first interaction with Blair in the police station parking lot. He also stated that Blair was still very unsteady on his feet at the time of his arrest.

Jody Bray, a patrol officer with the Decherd Police Department, testified that on July 26, 2009, he received a call from Officer Hill to return to the station because Officer Hill had encountered Blair in an intoxicated state in the police station parking lot. When Officer Bray arrived, he saw Blair sitting on the front bumper of a patrol car. He said that Blair was "[v]ery intoxicated" at the time. When Officer Bray conversed with Blair, he noticed that Blair was slurring his speech.

Officer Bray said that he and Officer Hill took Blair home. Both officers told Blair to stay inside the house, and Blair assured them that he would not leave. When Officer Bray left Blair's home, he drove approximately one-tenth of a mile, turned around, and as he was driving down the hill, he saw a man crossing Main Street. As he got closer, he realized that the man crossing the road was Blair. Officer Bray immediately called Officer Hill and requested that he come to the location where he had Blair detained. He stayed with Blair in the neighbor's yard until Officer Hill arrived. Officer Bray opined that Blair was simply too intoxicated to be walking the streets of Decherd the night of his arrest.

On cross-examination, Officer Bray stated that he thought he drove Blair home the night of July 26, 2009. On redirect examination, Officer Bray said that he made the determination to arrest Blair when he saw that Blair was not going to follow the instructions regarding staying inside his home until he was sober. He also said he had Blair in custody when Officer Hill arrived on the scene. On recross examination, Officer Bray said that Blair's level of intoxication was the same at the time of his arrest as at the time when he and Officer Hill drove him home.

Ryan Albaugh, a patrol officer with the Decherd Police Department, testified that on July 26, 2009, he was at work when he heard Officer Hill's request for Officer Bray to go to the location where he had Blair detained in the police station parking lot. At the time that Officer Hill was radioing Officer Bray, Officer Albaugh could hear a loud, unidentified voice in the background. When Officer Albaugh arrived at the scene, he saw that Blair was having difficulty sitting on the bumper of a patrol car. As he approached Blair, Officer Albaugh noticed the strong smell of an alcoholic beverage coming from him. He also said that Blair had slurred speech and opined that Blair was "pretty heavily intoxicated" that night.

On cross-examination, Officer Albaugh stated that although his patrol car had video capability, he did not videotape Blair the night of July 26, 2009. He also opined that Blair was extremely intoxicated when he was sitting on the bumper of the patrol car. Officer Albaugh said that Officer Hill had the authority to decide whether to arrest Blair that night.

Kevin Grant, a sergeant with the Franklin County Sheriff's Department, testified that he was processing and searching the individuals who were being booked into the jail on the

night of July 26, 2009. He said that Blair "appeared intoxicated" during the booking process.

Blair testified in his own behalf. He stated he had lived on Main Street in Decherd for nearly twenty years and had worked "here and there part-time." He said that on July 26, 2009, he had drunk "a quart of beer in a can" and then had decided to go to the store to buy another beer. Blair said he was having "muscle spasms" so he walked to the back of the pool room and walked up a dirt road and a gravel road because he did not want to walk along Main Street. He said that as he walked up the gravel road, he saw two police officers, and he asked one of the officers to take him home. He talked to one of the officers for a few minutes before the two officers took him home.

Once the officers left his home, Blair poured himself a glass of brandy. He went outside, sat on his porch, and placed the glass of brandy on the air conditioner. At that point, he saw the officers park across the street. One officer approached him and informed him that he was going to have to take him into custody. Blair responded, "Well, okay," and poured out his brandy. Blair denied having a bottle of brandy with him at the time of his arrest.

On cross-examination, Blair acknowledged that he had been drinking on the night of July 26, 2009, and had been walking down Main Street when he first saw the two officers near the police station. However, he denied being intoxicated when he first saw the officers.] He admitted that he was unsteady on his feet but claimed that this unsteadiness was caused by his muscle spasms. Blair said that one of the officers who took him home told him to go inside his house but did not tell him to stay inside. Blair acknowledged that he did not stay inside his home and that he consumed more alcohol after the officers left. However, he denied walking across Main Street to his neighbor's yard. He also denied being intoxicated at the time he was booked at the jail. He stated that he could not explain why three police officers and a sergeant at the jail said that he was drunk the night of his arrest. Blair said that he remembered waking up sober in jail.

At trial, the jury convicted Blair of public intoxication and assessed a fifty dollar fine. The trial court sentenced him to thirty days in the county jail. Blair timely filed a motion for new trial, which the trial court denied. He then filed a timely notice of appeal.

**ANALYSIS**

**I. Sufficiency of the Evidence.** Blair contends that the evidence is insufficient to support his conviction for public intoxication. Specifically, he argues that "the evidence was insufficient to prove that he was intoxicated in a public place to the extent that he may have been a danger to himself[,]" as required by Tennessee Code Annotated section 39-17-310(a)(1). See State v. Paul E. Mathis, No. 01C01-9605-CC-00223, 1998 WL 792222, at

-4-

*5 (Tenn. Crim. App., at Nashville, Nov. 16, 1998), perm. app. denied (Tenn. May 10, 1999) (reiterating that a jury must decide whether a person charged with public intoxication is a danger to himself or others); State v. Wilson, 990 S.W.2d 726, 729 (Tenn. Crim. App. 1998) (holding that the jury's decision regarding the elements of section 39-17-310 must be supported by sufficient evidence); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."). In response, the State argues that there was sufficient evidence presented at trial to convict Blair of public intoxication. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

Public intoxication is defined as follows:

A person commits the offense of public intoxication who appears in a public place under the influence of a controlled substance or any other intoxicating substance to the degree that:

(1) The offender may be endangered;

(2) There is endangerment to other persons or property; or

(3) The offender unreasonably annoys people in the vicinity.

T.C.A. § 39-17-310.

As relevant here, a public place is defined as the following:

"Public place" means a place to which the public or a group of persons has access and includes, but is not limited to, highways, transportation facilities, schools, places of amusement, parks, places of business, playgrounds and hallways, lobbies and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence. An act is deemed to occur in a public place if it produces its offensive or proscribed consequences in a public place[.]

Id. § 39-11-106(a)(29).

Here, as agreed to by the parties, the trial court gave the following charge to the jury regarding the offense of public intoxication:

Any person who commits the offense of public intoxication is guilty of a crime. For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements, and here are those . . . elements:

(1)    that the defendant was under the influence of an intoxicating substance;

(2)    that the defendant was under the influence to the degree [that] the defendant may have been in danger;

(3)    that the defendant was in a public place;
(4)    that the defendant acted either intentionally, knowingly[,] or recklessly.

And alcohol is an intoxicating substance.

The evidence at trial established beyond a reasonable doubt that Blair was under the influence of alcohol at the time of the offense. Officer Hill testified that Blair was unsteady

on his feet, was slurring his speech, and had the strong odor of an alcoholic beverage around him when he first encountered Blair in the police station parking lot. He stated that Blair admitted to him and Officers Bray and Albaugh that he had consumed "a lot" of alcohol that night. Officer Hill, after taking Blair home, informed him that he needed to stay inside his home because it was dangerous for him to be intoxicated while walking on the city streets and that he did not need to leave his home until he was sober. After being notified by Officer Bray that Blair had crossed Main Street, Officer Hill found Blair sitting in a neighbor's yard approximately ten to twenty feet from the road and holding a whiskey bottle that was three-fourths empty. He helped Blair stand before arresting him. Officer Hill stated that Blair was "very intoxicated" at the time of his arrest.

Officer Bray reiterated much of Officer's Hill testimony regarding Blair's intoxicated condition in the police station parking lot. He also confirmed that he and Officer Hill told Blair to stay inside his house after giving him a ride home. Officer Bray said that minutes after taking Blair home, he saw Blair crossing Main Street. He opined that Blair was too intoxicated to be walking the streets of Decherd at the time of his arrest.

Officer Ryan Albaugh testified that Blair was having difficulty sitting on the bumper of the patrol car in the police station parking lot the night of July 26, 2009. He also stated that Blair had the strong smell of an alcoholic beverage coming from him and opined that Blair was "pretty heavily intoxicated." Moreover, Sergeant Kevin Grant also stated that Blair "appeared intoxicated" during the booking process at the jail.

The evidence also established beyond a reasonable doubt that Blair was in a public place at the time of the offense. Although Blair claims that he was arrested while on his front porch, Officers Hill, Bray, and Albaugh testified that Blair was in an intoxicated state in the police station parking lot when they first observed him. In addition, Officers Hill and Bray testified that after taking Blair home, Blair left his house while in an intoxicated state, crossed Main Street, and sat down in a neighbor's yard with a nearly empty bottle of liquor.

The evidence at trial also established beyond a reasonable doubt that Blair was a danger to himself at the time of the offense. Blair argues that he was no more of a danger to himself at the time he was arrested than he was when he encountered the officers for the first time in the police station parking lot. He also intimates that he was not a danger to himself because he was sitting on his front porch at the time he was arrested. However, Officers Hill, Bray, and Albaugh testified that Blair was a danger to himself when they first observed him in an intoxicated state in the police station parking lot. In addition, Officers Hill and Bray testified that Blair was also a danger to himself when he crossed Main Street and sat down in a neighbor's yard immediately prior to his arrest.

Finally, although not specifically challenged by Blair, the evidence at trial established beyond a reasonable doubt that Blair acted either intentionally, knowingly, or recklessly at the time of the offense. Officers Hill and Bray testified that Blair left his home after they specifically told him to stay inside his house. Accordingly, the State established, at a minimum, that Blair acted recklessly at the time of the offense.

Viewing the evidence in the light most favorable to the State, we conclude that the evidence was sufficient to support Blair's conviction for public intoxication. We note that it is the jury's duty to determine the weight and credibility of the witnesses' testimony and to reconcile any conflicts in the proof. See Odom, 928 S.W.2d at 23. Accordingly, we will not "reweigh or reevaluate the evidence." Henley, 960 S.W.2d at 578-79. The jury was under no obligation to accredit Blair's testimony over the testimony of the four law enforcement officers who testified for the State. Blair is not entitled to relief.

**CONCLUSION**

Upon review, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE