# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 27, 2015

## STATE OF TENNESSEE v. NOLAN EXCELL PIPPEN

### Appeal from the Circuit Court for Marshall County
### No. 14CR12    Forest A. Durard, Jr., Judge

---

### No. M2015-00828-CCA-R3-CD – Filed January 28, 2016

---

Following a jury trial, the Defendant, Nolan Excell Pippen, was convicted of public intoxication, a Class C misdemeanor; and simple possession of marijuana, third or subsequent offense, a Class E felony. See Tenn. Code Ann. §§ 39-17-310, -418. The trial court imposed a total effective sentence of two years' incarceration. On appeal, the Defendant contends (1) that the evidence was insufficient to support his conviction for public intoxication; and (2) that the trial court erred in denying his motion to suppress the marijuana found in his pocket during a search incident to his arrest for public intoxication.[1] Following our review, we conclude that the evidence was insufficient to sustain the Defendant's conviction for public intoxication and that the trial court erred in denying the Defendant's suppression motion.[2] Accordingly, we reverse the judgments of the trial court and dismiss the charges against the Defendant.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed; Case Dismissed

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. JOHN EVERETT WILLIAMS, J., filed a separate opinion concurring in part and dissenting in part.

Michael Auffinger, Smithville, Tennessee, for the appellant, Nolan Excell Pippen.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Robert James Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] For the purpose of clarity, the issues have been reordered and renumbered from how they appear in the Defendant's appellate brief.

[2] In his brief, the Defendant also argued that the trial court erred in setting the length of his sentence for the simple possession offense. However, having reversed the Defendant's convictions, we need not address the sentencing issue.

**OPINION**

FACTUAL BACKGROUND

Officer Charles Brannon of the Lewisburg Police Department (LPD) testified at a pretrial suppression hearing. Officer Brannon testified that at approximately 8:04 p.m. on December 12, 2013, he was dispatched to the Martin Street Apartments on a report "that there was fighting in the parking lot and possibly intoxicated individuals." When he arrived at the apartment complex, another LPD officer, Ben Fender, was in the parking lot and was speaking to the Defendant. Officer Brannon testified that he approached the two men and that the Defendant appeared intoxicated. Officer Brannon explained that he could smell "an alcoholic beverage on [the Defendant's] breath" and that the Defendant "was unsteady on his feet."

Officer Brannon testified that the Defendant had stated that he had been involved in "an altercation" with two other people, Michael Crowder and Shelly Weir. According to Officer Brannon, the Defendant stated that the incident started in their apartment and spilled out into the parking lot. Officer Brannon testified that he believed Ms. Weir had fallen down during the altercation but admitted that he was "not exactly clear [on] the whole story." The Defendant then pointed out that Mr. Crowder and Ms. Weir were on the other side of the parking lot. In addition to Mr. Crowder and Ms. Weir, Officer Brannon recalled that the Defendant's "wife had arrived on the scene in a car" and that there were "two individuals over on the cross way."

Based on this, Officer Brannon concluded that the Defendant was "a nuisance to others" and "a danger to himself and others." Officer Brannon arrested the Defendant for public intoxication after his sergeant arrived "and investigated what [they] needed to do for the case." Officer Brannon testified that he "advised [the Defendant that he] was going to do a pat down of his body for weapons." Officer Brannon searched the Defendant and felt something hard in the left back pocket of the Defendant's jeans, which Officer Brannon "thought at that time was a knife." Officer Brannon asked the Defendant what was in the pocket, and the Defendant told him it was a cell phone and "a sandwich bag." Officer Brannon testified that he pulled a cellular phone and "a bag that had [a] green leafy substance . . . [he] believed to be marijuana" out of the Defendant's pocket.

The trial court issued a written order denying the Defendant's suppression motion. The trial court concluded that the warrantless search of the Defendant was a valid search incident to arrest. The trial court found that there was probable cause that the Defendant had committed the offense of public intoxication by being a danger to himself or others. Specifically, the trial court found that this was true in light of the fact that the police had

received a call "regarding a fight, coupled with the [fact that the] warring parties [were] still in close proximity to each other."

At trial, Officer Fender testified that he was the first officer to arrive at the apartment complex. Officer Fender recalled that he had been dispatched there on a call about "a lady possibly laying [sic] on the ground" and "some possible public intoxication." Officer Fender testified that the Defendant was in the parking lot when he arrived. According to Officer Fender, the Defendant smelled of alcohol and was "unsteady on his feet." Officer Fender explained that the Defendant "was staggering a little bit" and "making several steps trying to keep his balance."

Officer Fender testified that the Defendant stated that he had been "involved in an altercation with another subject" and then pointed out Mr. Crowder and Ms. Weir on the other side of the parking lot. Officer Fender admitted that he did not see Mr. Crowder and Ms. Weir until after the Defendant pointed them out to him. Officer Fender testified that the Defendant "seemed to be upset" and admitted that "at that time, [he] believed [the Defendant] was the complainant that called and was the one who was complaining about the incident."

Officer Fender testified that he left the Defendant with Officer Brannon and went across the parking lot to speak to Mr. Crowder and Ms. Weir. Officer Fender recalled that Mr. Crowder and Ms. Weir could not speak or stand up, that they smelled of alcohol, and that they "were hugging, kissing, [and] falling." Officer Fender arrested them for public intoxication. Officer Fender recalled that he put one of them in his patrol car and the other in the patrol car of a third officer who had arrived after Officer Brannon. Officer Fender testified that before he placed Mr. Crowder in the patrol car, he searched Mr. Crowder and discovered a pack of cigarettes that contained "a small bag" of marijuana.

Officer Fender testified that besides the officers, the Defendant, Mr. Crowder, and Ms. Weir, there was no one else in the parking lot except for "a lady in a white car" who pulled up as he was "starting to leave." Officer Fender admitted that there was no evidence of a fight in the parking lot, that there was no apparent damage to any property, and that "[e]verything appeared to be okay" when he arrived. Officer Fender further admitted that he "was unable to determine exactly what happened that night" due to "the level of intoxication of" Mr. Crowder and Ms. Weir.

Officer Brannon testified at trial consistently with his testimony from the pretrial suppression hearing. In addition, Officer Brannon testified that when he arrived at the parking lot, he did not see a woman lying on the ground but that he saw "some people off in the distance at the other end" of the parking lot, which he later learned were Mr. Crowder and Ms. Weir. Officer Brannon estimated that Mr. Crowder and Ms. Weir were

approximately fifty to one hundred yards away from the Defendant. Officer Brannon also recalled that the Defendant's girlfriend was in a car "parked near where [the Defendant] was at" when he arrived.

Officer Brannon testified that the Defendant admitted that "he had consumed some alcohol" earlier that night. Officer Brannon testified again about the Defendant stating that "he was involved in an altercation with other individuals that were in the parking lot." Officer Brannon further testified that he believed the altercation "was verbal" and that he did not know if it ever became physical. Officer Brannon testified that he "later" learned that Ms. Weir had fallen to the ground trying to separate Mr. Crowder and the Defendant. However, Officer Brannon admitted that he did not "personally witness any sort of altercation."

Officer Brannon testified that he felt the Defendant was a danger to himself, to others, and to "the property there." Officer Brannon further testified that he believed the Defendant was an annoyance to others and that he knew that "before [he] even got there" because there had been a complaint "stating that something was happening in the parking lot." Officer Brannon also cited the fact that he saw two people approximately fifteen to twenty feet away "looking" through an open doorway "in the direction" of the Defendant and the officers as evidence that the Defendant was being an annoyance to others.

Subsequent forensic testing by the Tennessee Bureau of Investigation revealed that the green leafy substance found in the plastic bag taken from the Defendant's pocket was .09 grams of marijuana.

Debra Burns testified that she had "been common-law married" to the Defendant for over twenty-five years.[3] Ms. Burns testified that on December 12, 2013, she and a friend had just left an Alcoholics Anonymous meeting when they drove by the Martin Street Apartments and saw what they believed was a person lain out in the parking lot. Ms. Burns claimed that she drove closer to investigate and found Ms. Weir "unresponsive" with her head lying on an urn containing "the ashes of . . . [Mr.] Crowder's mother."

Ms. Burns testified that she called the Defendant, whose apartment was nearby, and that he helped Ms. Weir to "her father's apartment . . . on the other side of the driveway." Ms. Burns claimed that after he helped Ms. Weir, the Defendant came back and talked to her and her friend "for a few minutes." Ms. Burns testified that she did not see "any altercation that night between anybody," that the Defendant "appeared fine," and that he did not seem intoxicated to her. Ms. Burns further testified that the Defendant

---

[3] It is well established that marriage in Tennessee is controlled by statute and that common-law marriages are not recognized in this state. See Martin v. Coleman, 19 S.W.3d 757, 760 (Tenn. 2000).

was walking back to his apartment when the police pulled into the parking lot. Ms. Burns admitted that she did not speak to the police that night and that she "bump[ed]" her car into a pole as she was leaving the parking lot.

After Ms. Burns's testimony, the trial court questioned the Defendant about his decision to testify at trial.[4] The Defendant then testified for the jury, explaining that several days prior to December 12, 2013, he was in his apartment reading the Bible when Mr. Crowder came to his door. The Defendant claimed that Mr. Crowder had stated that Ms. Weir had "kicked him out" and that he had nowhere to stay. The Defendant testified that he agreed to let Mr. Crowder stay at his apartment for a few days.

The Defendant claimed that on December 12, 2013, he came home to his apartment to find Mr. Crowder "there drinking." The Defendant further claimed that he then went to the bathroom, and when he returned, Mr. Crowder had "drugs on the table." The Defendant testified that he started "kind of bum-rushing" Mr. Crowder and "told him to get his s--t and get out." The Defendant recalled seeing Mr. Crowder place the drugs "into a cigarette pack" as he was leaving. According to the Defendant, after Mr. Crowder left the Defendant's apartment, Ms. Weir helped him "move his stuff down to [Ms. Weir's] daddy's house."

The Defendant claimed that, later that night, he was "nice and warm" in his apartment "enjoying a beer" when he received a phone call from Ms. Burns about a woman lying "out in the yard." According to the Defendant, Ms. Burns told him that the woman was "two feet from [his] door," so he went outside to check on her. The Defendant testified that he found Ms. Weir lying outside. The Defendant opined that Ms. Weir "was knocked out pretty good" because she had fallen into a hole and "hit her head on [an] urn" containing Mr. Crowder's mother's ashes. The Defendant explained that it was not unusual for Ms. Weir to being carrying the urn that night because Mr. Crowder carried it "around with him . . . . [w]herever he [went]" so he could take "his mother with him."

The Defendant claimed that he carried Ms. Weir "to her daddy's house" and left "her down there." The Defendant testified that he then spoke to Ms. Burns because she "came over . . . to give [him] . . . a Christmas card." The Defendant denied that there was any sort of altercation and opined that the police were only "called because [Ms. Burns] had bumped into a little pole." The Defendant denied being intoxicated and denied

---

[4] It appears that the trial court was conducting a hearing pursuant to Momon v. State, 18 S.W.3d 152 (Tenn. 1999), which outlined a prophylactic procedure designed to insure that a defendant's waiver of his right to testify is voluntary, knowing, and intelligent. See Mobley v. State, 397 S.W.3d 70, 90-91 (Tenn. 2013). However, said procedure was not required prior to the Defendant's testimony as our supreme court has "respectfully decline[d] to extend the reach of the prophylactic procedure in Momon to instances in which a criminal defendant elects to testify." Id. at 90.

telling the police officers that there had been an altercation. The Defendant claimed that he told the officers everything that he had testified to at trial about Mr. Crowder and Ms. Weir.

With respect to the marijuana, the Defendant claimed that as he was leaving his apartment, he saw an empty bag left by Mr. Crowder on the floor. The Defendant insisted that he did not realize there was marijuana in the bag and that he thought it was empty. The Defendant claimed that he believed the bag was trash, so he picked it up and put it in his back pocket because he was going to throw it away in the dumpster while he was outside. The Defendant further claimed that he told Officer Brannon that the bag was trash and not his.

Based upon the foregoing, the jury convicted the Defendant of public intoxication on the specific grounds that the Defendant had "unreasonably annoy[ed] people in the vicinity" and simple possession of marijuana. Thereafter, the State presented evidence that the Defendant had three prior convictions for simple possession. The jury then convicted the Defendant of simple possession of marijuana, third or subsequent offense. At the sentencing hearing, the trial court sentenced the Defendant to thirty days for the public intoxication conviction and two years for the felony simple possession conviction. The trial court ordered the sentences to be served concurrently for a total effective sentence of two years' incarceration. This timely appeal followed.

ANALYSIS

*I. Sufficiency of the Evidence*

The Defendant contends that the evidence was insufficient to support his conviction for public intoxication. The Defendant argues that the State failed to prove that he was an unreasonable annoyance to people in the vicinity. The Defendant further argues that "the record contains zero statements or testimony that would establish the fact that" anyone was annoyed by his behavior that night. The State responds that the evidence was sufficient to sustain the Defendant's conviction because he admitted to being in an altercation with Mr. Crowder and Ms. Weir along with "the fact that two persons called [the] police about [a] disturbance" and that there was a "collection of onlookers at the complex."

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence, rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the

evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326.

The foregoing standard "applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Our supreme court has held that circumstantial evidence is as probative as direct evidence. State v. Dorantes, 331 S.W.3d 370, 379-81 (Tenn. 2011). In doing so, the supreme court rejected the previous standard which "required the State to prove facts and circumstances so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." Id. at 380 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)) (internal quotation marks omitted).

Instead, "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Dorantes, 331 S.W.3d at 381. The reason for this is because with both direct and circumstantial evidence, "a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." Id. at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)). To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

Public intoxication is committed when a person "appears in a public place under the influence of a controlled substance, controlled substance analogue or any other intoxicating substance to the degree that: (1) The offender may be endangered; (2) There is endangerment to other persons or property; or (3) The offender unreasonably annoys people in the vicinity." Tenn. Code Ann. § 39-17-310(a). Here, the jury found the Defendant guilty under subsection (a)(3), that he was intoxicated to the degree that he

"unreasonably annoy[ed] people in the vicinity."  The Defendant does not dispute the jury's finding that he was intoxicated in a public place.

In order to sustain a conviction for public intoxication under subsection (a)(3), "[t]he statute requires that the defendant, in fact, 'unreasonably annoy[] people in the vicinity,' not that his conduct could have annoyed others."  State v. Wilson, 990 S.W.2d 726, 729 (Tenn. Crim. App. 1998) (brackets in original) (emphasis added).  To that end, a defendant "arguing loudly outside his residence after midnight" could not be convicted of public intoxication under subsection (a)(3) when there was "no proof that he actually annoyed anyone else in the vicinity."  Id.  "That someone in the area could have heard the defendant does not establish that he unreasonably annoyed others."  Id.; see also United States v. Ernest Reagan, No. 3:07-CR-98, 2007 WL 4208821, at *15 (E.D. Tenn. Nov. 26, 2007) (citing Wilson and holding that officer's belief that a vehicle's "loud stereo was annoying people" and that a passenger in the vehicle was annoyed "by [a] potential domestic dispute [the officer] believed he had heard" did not constitute a violation of subsection (a)(3) because there was no evidence the defendant "actually annoyed people in the vicinity").

Here, the Defendant was found alone in the parking lot of his apartment complex.  Mr. Crowder and Ms. Weir were approximately fifty to one hundred yards away from the Defendant, and Officer Fender testified that he did not see them until the Defendant pointed them out to him.  Officer Fender also testified that when he arrived at the parking lot, there was no evidence of a physical altercation or damage to any property and that "[e]verything appeared to be okay."  The Defendant allegedly told the responding officers that he had been involved in an altercation with Mr. Crowder and Ms. Weir, but neither Officer Fender nor Officer Brannon witnessed "any sort of altercation."  Furthermore, Mr. Crowder and Ms. Weir were too intoxicated to provide the officers with an explanation of what had occurred, and Officer Fender admitted that he "was unable to determine exactly what happened that night."

The State argues that "the fact that two persons called [the] police about [a] disturbance" was sufficient to satisfy subsection (a)(3).  However, there was no evidence to establish who had called the police, and Officer Fender and Officer Brannon's testimony conflicted as to exactly what the complaints were about.  In fact, Officer Fender testified that he initially believed that the Defendant "was the complainant that called and was the one who was complaining about the incident" because the Defendant "seemed to be upset" about the alleged altercation.  The Defendant claimed the police had been called because Ms. Burns "had bumped into a little pole" while backing out of the parking lot.  None of this amounts to evidence that the Defendant was intoxicated to a degree that his behavior unreasonably annoyed people in his vicinity.

Likewise, the fact that there was a "collection of onlookers at the complex" was not sufficient to justify a conviction for public intoxication under subsection (a)(3). There was no testimony presented at trial from any of the alleged "onlookers" or evidence to establish that the Defendant's behavior had unreasonably annoyed them. The fact that "onlookers" gathered during the arrest of the Defendant likely had more to do with the fact that the LPD responded to a call about "some possible public intoxication" in the parking lot of an apartment complex with, at a minimum, four officers and at least three patrol cars rather than it did with the behavior of the Defendant. Accordingly, we conclude that the State failed to prove that the Defendant, in fact, unreasonably annoyed people in his vicinity. Therefore, the Defendant's conviction for public intoxication is reversed and dismissed.

## II. Motion to Suppress

The Defendant contends that the trial court erred in denying his motion to suppress the marijuana found in his pocket during a search incident to his arrest for public intoxication. In his brief, the Defendant couches this argument as a challenge to the sufficiency of the evidence. However, the Defendant argues that the arresting officers lacked probable cause to arrest him for public intoxication; therefore, the warrantless search of the Defendant was not justified as a search incident to arrest, and the marijuana seized should have been suppressed. The State responds that the officers had probable cause to suspect that the Defendant had committed the offense of public intoxication.

On appellate review of suppression issues, the prevailing party "is entitled to the strongest legitimate view of the evidence . . . as well as all reasonable and legitimate inferences that may be drawn from that evidence." State v. Talley, 307 S.W.3d 723, 729 (Tenn. 2010) (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). Questions about "the assessment of witness credibility, the weight and value of evidence, and the resolution of evidentiary conflicts are entrusted to the trial court." State v. Meeks, 262 S.W.3d 710, 722 (Tenn. 2008). When the trial court "makes findings of fact in the court of ruling upon a motion to suppress, those findings are binding on appeal unless the evidence in the record preponderates against them." Id. Additionally, a trial court's conclusions of law along with its application of the law to the facts are reviewed de novo without any presumption of correctness. Id.

Both the federal and state constitutions offer protection from unreasonable searches and seizures with the general rule being "that a warrantless search or seizure is presumed unreasonable and any evidence discovered subject to suppression." Talley, 307 S.W.3d at 729 (citing U.S. Const. amend. IV; Tenn. Const. art. I, § 7). As has often been repeated, "the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject to only a few specifically

established and well delineated exceptions.'" <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 454-55 (1971) (quoting <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967)); <u>see also</u> <u>State v. Berrios</u>, 235 S.W.3d 99, 104 (Tenn. 2007).

Such exceptions to the warrant requirement include, "searches incident to arrest, plain view, exigent circumstances, and others, such as the consent to search." <u>Talley</u>, 307 S.W.3d at 729. The constitutional protections outlined above "are designed to safeguard the privacy and security of individuals against arbitrary invasions of government officials." <u>Id.</u> (quoting <u>State v. Keith</u>, 978 S.W.2d 861, 865 (Tenn. 1998)) (internal quotation marks omitted). Therefore, "a trial court necessarily indulges the presumption that a warrantless search or seizure is unreasonable, and the burden is on the State to demonstrate that one of the exceptions to the warrant requirement applied at the time of the search or seizure. <u>State v. Bobby Killion</u>, No. E2008-01350-CCA-R3-CD, 2009 WL 1748959, at *14 (Tenn. Crim. App. June 22, 2009).

To justify a warrantless search incident to an arrest, "four conditions must be met:"

> (1) the arresting officer must have probable cause to believe that the defendant had engaged or was engaging in illegal activity; (2) the probable cause must attach to an offense for which a full custodial arrest is permitted – i.e., there must be statutory grounds for a warrantless arrest; (3) the arrest must be consummated either prior to or contemporaneously with the search; and (4) the search must be incident to, not the cause of, the arrest.

<u>State v. Richards</u>, 286 S.W.3d 873, 878 (Tenn. 2009) (internal citations omitted). "[A] search incident to arrest is supported by probable cause only if the facts, circumstances, and reliable information known to the officers will warrant a prudent person's belief that the suspect has committed an offense." <u>Id.</u> at 879.

The trial court denied the Defendant's suppression motion on the grounds that there was probable cause that the Defendant was intoxicated to an extent that he was a danger to himself or others. The trial court based this conclusion on its finding of fact that the police had received a call "regarding a fight, coupled with the [fact that the] warring parties [were] still in close proximity to each other." However, the record preponderates against that finding.

Officer Fender testified that he was dispatched to the apartment complex regarding "a lady possibly laying [sic] on the ground" and "some possible public intoxication." Officer Brannon estimated that Mr. Crowder and Ms. Weir were fifty to one hundred yards away from the Defendant on the other side of the parking lot, and Officer Fender testified that he did not even see Mr. Crowder and Ms. Weir until the Defendant pointed

them out to him. Furthermore, Officer Fender testified that there was no evidence of a fight in the parking lot and that "[e]verything appeared to be okay" when he arrived.

The Defendant, while exhibiting the classics signs of intoxication, was in the parking lot of his residence. There was no proof that the Defendant was unable to walk or stand, or that he was disoriented or incoherent. As such, the facts, circumstances, and reliable information known to the officers did not warrant a prudent person's belief that the Defendant was intoxicated to the extent that he was a danger to himself or others. Cf. State v. Reynaldo Quintanilla, No. M2002-02440-CCA-R3-CD, 2003 WL 21145569, at *7 (Tenn. Crim. App. May 16, 2003) (finding probable cause to arrest the defendant for public intoxication because the defendant was intoxicated "to the degree that he was a danger to himself" when the defendant was found "'staggering' along a state highway," "mumbling incoherently," "had a head injury," "admitted . . . that he had just been involved in an automobile accident," and "smelled of alcohol").

In denying the Defendant's motion for new trial, the trial court cited the fact that "this [incident] had drawn [the] attention" of "some other tenants in the apartment complex" as evidence that the Defendant was "being unreasonably annoying to people in the vicinity." However, as discussed above, there was no proof presented at the suppression hearing or at trial that the Defendant's actions, in fact, unreasonably annoyed anyone in his vicinity. Given the facts discussed above regarding the sufficiency of the convicting evidence for the public intoxication conviction, we also conclude that officers lacked probable cause that the Defendant was intoxicated to the extent that he was an unreasonable annoyance to people in the vicinity.

Accordingly, we conclude that the officers lacked probable cause to arrest the Defendant for public intoxication and that the trial court erred in denying the Defendant's motion to suppress. As the marijuana found in the Defendant's back pocket was the sole evidence supporting his conviction for simple possession, third or subsequent offense, we reverse and dismiss his conviction.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are reversed and dismissed.

_____
D. KELLY THOMAS, JR., JUDGE

-11-